**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------- x
JOHN ALAN SAKON,                 :
                                 :
         Plaintiff,              :
                                 :
v.                               :
                                 :
                                 :  Civil No. 3:22-cv-897 (AWT)
STATE OF CONNECTICUT; THE HON.   :
TAMMY NGUYEN-O'DOWD; MELANIE     :
BUCKLEY; THE HON. PATRICK        :
CARROLL; and LINETH SANTOS,      :
                                 :
         Defendants.             :
------------------------------- x
```

## RULING ON DEFENDANTS' MOTION TO DISMISS

Plaintiff John Alan Sakon has sued the State of Connecticut, Judge Tammy Nguyen-O'Dowd, Melanie Buckley, Judge Patrick Carroll, and Lineth Santos claiming violations of his rights during and after child custody proceedings in Connecticut Superior Court. See Third Am. Compl. (ECF No. 65).[1] The defendants have moved to dismiss all the claims in the Third Amended Complaint. For the reasons set forth below, the defendants' motion is being granted.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

This case arises from a custody proceeding that was part of an action in Connecticut Superior Court for dissolution of the plaintiff's marriage. On July 15, 2022, after a trial on the

---

[1] The plaintiff has labeled his most recent complaint as a "Third Amended Complaint," but it is the second amendment to his complaint.

issue, Judge Nguyen-O'Dowd awarded custody of the plaintiff's child to the child's mother in a written ruling (the "Custody Judgment"). See id. at 20, 28-30.[2] On February 20, 2024, the Connecticut Appellate Court affirmed the Custody Judgment, and the plaintiff unsuccessfully petitioned the Connecticut Supreme Court for further review. See F.S. v. J.S., 223 Conn. App. 763 (2024), cert. denied, 350 Conn. 903 (2024); Third Am. Compl., at 30-31.

During the trial, Lineth Santos, an employee of the Connecticut Department of Children and Families ("DCF"), produced DCF records in response to a subpoena. See Third Am. Compl., at 19. Judge Nguyen-O'Dowd admitted those DCF records into evidence. See id. Those records were quoted in the Custody Judgment. See id. at 20, 28-30.

During the custody trial, the plaintiff originally requested an accommodation in the form of having the trial proceed on alternating days; "he argu[ed] that he would not go forward based on medical advice." F.S., 223 Conn. App. at 778-79 & n.12, cert. denied, 350 Conn. 903 (2024). Connecticut Superior Court Judge Leo Diana issued an order on December 8, 2021, granting the plaintiff's oral motion to continue trial and stating that the court would "make accommodations as follows:

---

[2] The page numbers cited to in this ruling for documents that have been electronically filed refer to the page numbers in the header of the documents and not to the page numbers in the original documents, if any.

the remaining days of trial shall continue in half day morning sessions." Third Am. Compl., at 22-23. Subsequently, Judge Nguyen-O'Dowd reverted to the plaintiff's originally requested accommodation without his consent, and scheduled full trial days on February 14, 16, and 18, 2022, and on March 9 and 15, 2022. See id. at 779; Third Am. Compl., at 23. The plaintiff took two actions in response to this change in the trial schedule.

First, he filed an administrative ADA grievance with the Director of the Superior Court's Human Resource Management Unit, in which he requested that the trial proceed in half-day sessions as ordered by Judge Diana. See id. at 24; id. Ex. F. That grievance was dismissed on February 18, 2022, by defendant Buckley. See id. Ex. F. Buckley stated: "Your grievance is denied as the resolution you are requesting fall[s] outside the scope of the ADA Grievance complaint procedures as it is a matter for the Court." Id. Buckley referred the plaintiff to the Department of Justice, Civil Rights Division, Disability Rights Section, and to the Connecticut Commission on Human Rights and Opportunities, if he desired further review. See id. Defendant Carroll was the Chief Court Administrator at the time. See id. at 27.

Second, despite the fact that Judge Nguyen-O'Dowd had scheduled trial for nonconsecutive full trial days, "[o]n 02/18/2022, 03/09/2022, and 03/15/2022, . . . the Plaintiff

-3-

exercised [Judge Diana's] A.D.A. Accommodation Order of 12/08/2022 to half-day trial sessions." Id. at 27. On March 15, 2022, the plaintiff did not return for trial after the lunch recess. In response, the court "concluded" his case because of his failure "to present his testimony and evidence as set forth in the court's scheduling order," and also denied with prejudice his pending motions. See Third Am. Compl. Ex. J (ECF No. 65-10).

On July 15, 2022, the same day the Custody Judgment was entered, the plaintiff initiated this action in federal court. Shortly thereafter he also appealed the Custody Judgment to the Connecticut Appellate Court. He filed the Third Amended Complaint in this action on March 2, 2024, after the Connecticut Appellate Court had affirmed the Custody Judgment in F.S. v. J.S. The Connecticut Supreme Court denied the plaintiff's petition for certification to further appeal on October 8, 2024. See 350 Conn. 903 (2024).

There are fourteen counts in the Third Amended Complaint, many of which contain multiple legal claims.[3] The Third Amended Complaint has two counts designated as "Count 8," and two designated as "Count 9." For purposes of clarity the court refers to each count in the Third Amended Complaint by using the paragraph number preceding that count. Thus the multiple Counts

---

[3] Where the plaintiff describes a legal claim only in terms of a federal constitutional right that he seeks to invoke, the court construes the claim as one brought under 42 U.S.C. § 1983 for vindication of that right.

8 and 9 are designated as Counts 8, 9, 10, and 11. See Third Am. Compl., at 39-41.

Count 1 has claims under Title II of the ADA, the Rehabilitation Act, and 42 U.S.C. § 1983 against Melanie Buckley based on her denial of the plaintiff's administrative ADA grievance. See Third Am. Compl., at 34. Count 2 has claims under Title II of the ADA and 42 U.S.C. § 1983 against Judge Carroll, see id. at 34-35, based on Buckley being his "agent" because he was the "Chief Court Administrator," see id. at 4. Counts 3 and 4 have claims under Title II of the ADA and 42 U.S.C. § 1983 against Judge Nguyen-O'Dowd based on her actions during the custody trial. See id. at 35-36. Counts 5, 6, 9, 10, 11, and 12 have claims under Title II of the ADA, 42 U.S.C. § 1983, and the Connecticut Constitution against Judge Nguyen-O'Dowd based on the Custody Judgment. See id. at 36-42. Count 13 is a claim that Judge Nguyen-O'Dowd "abused her discretion" by considering certain evidence during the custody trial. Id. at 42. Counts 7 and 8 have claims under 42 U.S.C. § 1983 predicated on a Connecticut criminal statute against Lineth Santos and Judge Nguyen-O'Dowd, respectively, based on the use of DCF records during the custody trial. See id. at 39-40. Count 14 is a procedural due process claim pursuant to 42 U.S.C. § 1983 against the Connecticut Judicial Branch alleging a failure to timely provide the plaintiff with a transcript of the custody

proceedings so he could use them when he appealed the Custody Judgment to the Connecticut Appellate Court. See id. at 42-44.

## II.  LEGAL STANDARD

When deciding a motion to dismiss under Rule 12(b)(1), the court is "not to draw inferences from the complaint favorable to the plaintiffs." J.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004). Rather, "when the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) (citing Norton v. Larney, 266 U.S. 511, 515 (1925)). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 550, 555 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations omitted). However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Id. at 568.

       "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Mytych v. May Dep't Store Co., 34 F. Supp. 2d 130, 131 (D. Conn. 1999) (quoting Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984)). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990) (citing Scheuer, 416 U.S. at 232).

In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993). "[I]n some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss. A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).

When interpreting the allegations in a pro se complaint, the court applies "less stringent standards than [those applied to] formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Branham v. Meachum, 77 F.3d 626, 628-29 (2d Cir. 1996). Furthermore, the court should interpret the plaintiff's complaint "to raise the strongest arguments [it] suggest[s]." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

"Nonetheless, a pro se complaint must state a plausible claim for relief," Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013) (citing Harris v. Mills, 572 F.3d 66, 73 (2d Cir. 2009)), and the defendants have filed a Notice to Self-Represented

Litigant Concerning Motion to Dismiss as required by Local Rule 12(a). Consistent with the liberal reading of a <u>pro</u> <u>se</u> plaintiff's complaint, "[a] district court deciding a motion to dismiss may consider factual allegations made by a <u>pro</u> <u>se</u> party in his papers opposing the motion." <u>Walker</u>, 717 F.3d at 122 n.1.

## III. DISCUSSION

As the defendants note, it is unclear whether the plaintiff is suing the individual defendants in both their official and individual capacities. <u>See</u> Defs.' Mem. in Supp. of Mot. to Dismiss (ECF No. 74-1) ("Defs.' Mem."), at 2. Construing the complaint liberally in favor of the plaintiff, the court proceeds on the assumption that he is suing the individual defendants in both their official and individual capacities.

### A.   Counts 1 and 2: Defendants Buckley and Carroll

The plaintiff brings claims against defendants Buckley and Carroll pursuant to 42 U.S.C. § 1983 for due process violations and under Title II of the ADA for disability discrimination. These claims are being dismissed because they are either barred by the Eleventh Amendment or fail to state a claim upon which relief can be granted.

#### 1.   Section 1983

"A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." <u>Pennhurst State Sch. & Hosp. v. Halderman</u>,

465 U.S. 89, 121 (1984). "States--and state officers, if sued in their official capacities for retrospective relief--are immunized by the Eleventh Amendment from suits brought by private citizens in federal court . . . ." K & A Radiologic Tech. Servs., Inc. v. Comm'r of Dep't of Health of State of N.Y., 189 F.3d 273, 278 (2d Cir. 1999). "[A]s when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." Pennhurst, 465 U.S. at 101-02.

"In order to be subject to suit in federal court, a state must expressly and unambiguously waive its sovereign immunity, or Congress must clearly and unmistakably express its intention to abrogate the immunity in the language of the particular statute." Wagner v. Conn. Dep't of Correction, 599 F. Supp. 2d 229, 238 (D. Conn. 2009). "A State's sovereign immunity is not abrogated by 42 U.S.C. § 1983," Thomas v. Calero, 824 F. Supp. 2d 488, 498 (S.D.N.Y. 2011), and "Connecticut has not waived its sovereign immunity" under Section 1983, Wagner, 599 F. Supp. 2d at 238.

The plaintiff's § 1983 official-capacity claims against defendants Buckley and Carroll are barred by the Eleventh Amendment because Connecticut has not waived its sovereign immunity for such claims. Therefore these claims fail for lack

of subject matter jurisdiction.

Although Ex parte Young, 209 U.S. 123 (1908) provides an exception to the Eleventh Amendment bar, the Third Amended Complaint does not meet the requirements for that exception. Under Ex parte Young, "[a] plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that his complaint (a) 'alleges an ongoing violation of federal law' and (b) 'seeks relief properly characterized as prospective.'" In re Deposit Ins. Agency, 482 F.3d 612, 618 (2d Cir. 2007) (citing Verizon Md., Inc. v. Public Service Comm'n of Md., 535 U.S. 635, 645 (2002); In re Dairy Mart Convenience Stores, Inc., 411 F.3d 367, 372 (2d Cir. 2005)). "[A] state official in his or her official capacity" may be "sued for injunctive relief" as a "person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 n.10 (1989) (quoting Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985)). But "declaratory relief is not permitted under Ex parte Young when it would serve to declare only past actions in violation of federal law: retroactive declaratory relief cannot be properly characterized as prospective." New York State Corr. Officers & Police Benevolent Ass'n, Inc. v. New York, 911 F. Supp. 2d 111, 129 (N.D.N.Y.

2012). Also, the Ex parte Young exception "does not apply to claims against state officials who lack authority to implement the requested prospective injunctive relief." Campbell v. Waterbury, 585 F. Supp. 3d 194, 203 (D. Conn. Feb. 9, 2022).

Here, the plaintiff's § 1983 claims against these two defendants do not allege any ongoing violation. He contends that "[t]he denial of [an] Administrative Remedy . . . by Defendant Buckley [is] a § 1983 violation of the Plaintiff's due process rights under the color of law . . . ." Third Am. Compl., at 34. But this is a past event. The plaintiff's custody trial ended in 2022, so there can be no ongoing violation of the plaintiff's due process rights related to his administrative ADA grievance. Nor can there be any prospective relief available from the Chief Court Administrator, Judge Carroll, who in any event is no longer in that administrative role. See Defs.' Mem., at 26 ("[A]ny injunction against Judge Carroll would be futile since he is no longer in that role."). Nor has the plaintiff alleged that Buckley, Carroll, or any official who administers courthouse programs has the "authority to implement [any] requested prospective injunctive relief," Campbell, 585 F. Supp. 3d at 203, against a Superior Court judge with respect to her own trial proceedings. Exhibit F to the Third Amended Complaint states, and the plaintiff does not contradict, that Buckley did not believe she had the power to grant the relief the plaintiff

sought from her. Accordingly, the Eleventh Amendment bars the plaintiff's § 1983 claims against Buckley and Carroll with respect to injunctive relief.

As to claims against these defendants in their individual capacities, drawing all reasonable inferences in the plaintiff's favor, he has failed to allege facts that state a Fourteenth Amendment procedural due process claim. "The threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." Narumanchi v. Bd. of Trustees of Connecticut State Univ., 850 F.2d 70, 72 (2d Cir. 1988) (citing Board of Regents v. Roth, 408 U.S. 564 (1972)). "If a protected interest is identified, a court must then consider whether the government deprived the plaintiff of that interest without due process. The second step of the analysis thus asks what process was due to the plaintiff, and inquires whether that constitutional minimum was provided in the case under review." Id. (citing Mathews v. Eldridge, 424 U.S. 319 (1976)).

The plaintiff has not identified a "property or liberty interest protected by the Constitution" that he was deprived of. The plaintiff was given the reason for the denial of his ADA grievance, namely that the judge overseeing the custody trial had control over that proceeding and the Human Resource Management Unit of the Superior Court did not. See Third Am. Compl. Ex. F. Nor does the plaintiff identify any

constitutionally recognized property or liberty interest he had in the administrative grievance procedure, which is distinct from any such interest in the underlying trial proceedings. Therefore, the plaintiff's § 1983 procedural due process claim based on the administrative ADA grievance fails because he has not stated a claim upon which relief can be granted.

### 2.    Title II of the ADA

A plaintiff can establish that a particular claim is not barred by the Eleventh Amendment by showing that a state has consented to suit "in unequivocal terms" or that "Congress, pursuant to a valid exercise of power, unequivocally expresse[d] its intent to abrogate the immunity." Green v. Mansour, 474 U.S. 64, 68 (1985). "[I]nsofar as Title II [of the ADA] creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." United States v. Georgia, 546 U.S. 151, 159 (2006).

In Georgia, the Supreme Court "established a three-step process for analyzing whether Congress has validly abrogated a state's sovereign immunity from suit in the context of a particular Title II claim." Mary Jo C. v. N.Y. State and Local Retirement Sys., 707 F.3d 144, 152 (2d Cir. 2013). Specifically, a court should

> determine . . . on a claim-by-claim basis, (1)
> which aspects of the State's alleged conduct
> violated Title II; (2) to what extent such
> misconduct also violated the Fourteenth Amendment;
> and (3) insofar as such misconduct violated Title
> II but did not violate the Fourteenth Amendment,
> whether Congress's purported abrogation of
> sovereign immunity as to that class of conduct is
> nevertheless valid.

Georgia, 546 U.S. at 159; see also Bolmer v. Oliveira, 594 F.3d

134, 147-49 (2d Cir. 2010).

In Counts 1 and 2 the plaintiff claims that the denial of his

administrative ADA grievance by Buckley, and Carroll's failure to

remedy that denial, constitute disability discrimination. See

Third Am. Compl., at 34-35.

> To establish a violation of Title II, [the
> plaintiff] must show that (1) he is a "qualified
> individual with a disability," (2) [the
> defendants] [are] subject to the ADA, and (3) he
> was, "by reason of such disability, . . . excluded
> from participation in or . . . denied the benefits
> of the services, programs, or activities of a
> public entity, or . . . subjected to
> discrimination by any such entity."

Bolmer, 594 F.3d at 148 (quoting 42 U.S.C. § 12132; citing

Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003)).

Here the plaintiff has failed to meet his burden with respect

to the third element of a Title II claim.[4] The plaintiff has not

---

[4] The plaintiff also brings a claim under the Rehabilitation Act, 29 U.S.C.
§ 794 ("Section 504"), against Buckley based on the same conduct. "Apart from
the Rehabilitation Act's limitation to denial of benefits 'solely' by reason
of disability and its reach of only federally funded--as opposed to 'public'-
-entities, the reach and requirements of both are precisely the same." Weixel

alleged facts which could show that he was "by reason of such
disability, . . . excluded from participation in or . . . denied
the benefits of the services, programs, or activities of a public
entity, or . . . subjected to discrimination by any such entity."
42 U.S.C. § 12132.

> "[C]onsideration of [plaintiff's] disability,
> standing alone, is not a violation of the
> ADA." Schweitzer v. Crofton, 935 F. Supp. 2d
> 527, 553 (E.D.N.Y. 2013), aff'd, 560 Fed. Appx.
> 6 (2d Cir. 2014) (citing Ward v. Murphy, 330 F.
> Supp. 2d 83, 98-99 (D. Conn. 2004)). "The issue
> is whether [defendants] discriminated against
> [the plaintiff] because of her disability." Id.
> (emphasis added). "To establish that
> discrimination occurred 'by reason of' their
> disabilities, plaintiffs must demonstrate that
> disability discrimination was a 'but-for cause
> of any adverse' action." [Watley v. Dep't of
> Children & Families, No. 3:13-cv-1858 (RNC),
> 2019 WL 7067043, at *8 (D. Conn. Dec. 23,
> 2019)] (citing Natofsky v. City of New York, 921
> F.3d 337, 348-49 (2d Cir. 2019)). It is not
> sufficient to state a claim that a plaintiff's
> disability was one of several motivating
> factors—but not a "but-for" cause—behind a
> defendant's action. Id.

Grullon v. Admin. for Children's Servs., 18-cv-3129 (LJL), 2021
WL 981848, at *12 (S.D.N.Y. Mar. 16, 2021) (some modification in
original) (footnote omitted). Exhibit F to the Third Amended
Complaint states that Buckley did not believe she had the power
to grant the relief the plaintiff sought from her. The plaintiff

---

v. Bd. of Educ., 287 F.3d 138,146 n.6 (2d Cir. 2002). The causation standard
under Section 504--that the plaintiff's disability must be the "sole" cause
for the denial of benefits--places a higher burden on the plaintiff than
Title II does. Accordingly, because his Title II claim fails on causation
grounds, his Section 504 claim fails on this basis as well.

does not allege facts which could show otherwise. Thus the Third
Amended Complaint shows that there was a reason that was
unrelated to the claimed disability.

As the Third Amended Complaint does not contain factual
allegations establishing the third element of a Title II claim,
there is no claim to be analyzed with respect to the second and
third steps of the Georgia analysis. Therefore, the official-
capacity ADA claims in Counts 1 and 2 are barred by the Eleventh
Amendment.

With respect to these defendants in their individual
capacities, "[t]he plaintiff 'may not maintain an ADA claim
against a state actor in his or her individual capacity.'
Therefore, the ADA claims asserted against the defendants in
their individual capacities must be dismissed." Sakon III, 2024
WL 4041305, at *13 (quoting Schlosser v. Elzea, No. 3:19-cv-1380
(SRU), 2020 WL 887752, at *4 (D. Conn. Feb. 24, 2020) (citing
Garcia, 280 F.3d at 107)).

**B.    Counts 3 and 4: Judge Nguyen-O'Dowd**

In each of Counts 3 and 4, the plaintiff brings claims
against Judge Nguyen-O'Dowd for violation of Title II of the ADA
and pursuant to 42 U.S.C. § 1983.

In Count 3 the plaintiff claims:

> The refusal of Defendant Nguyen[-O'Dowd] to abide
> by her duty under Title II of the A.D.A.; the refusal
> of Defendant Nguyen[-O'Dowd] to provide a due process

> hearing as to the rights of the Plaintiff under the
> A.D.A; the substitution of her opinion for that of a
> medical professional thereby placing Plaintiff's
> Health at risk; Defendant[] Nguyen[-O'Dowd]'s order
> that the Plaintiff was to proceed at risk to his
> health; are not only a violation of Plaintiff's rights
> granted under Title II of the A.D.A., it is also a
> violation of Plaintiff's rights under the color of
> law, 42 U.S. Code § 1983[.]

Third Am. Compl., at 36.

In Count 4 the plaintiff claims:

> Defendant Nguyen[-O'Dowd] retaliated against
> Plaintiff for his exercise of a court-ordered
> accommodation by dismissing pending motions with
> prejudice, terminating trial, and proceeding to
> judgment, a prohibited act under Title II of the
> A.D.A. 28 CFR 35.134; and a violation of the
> Plaintiff's civil rights 42 U.S. Code § 1983.

Id.

The claims under Title II of the ADA fail to state a claim upon which relief can be granted or are barred by the Eleventh Amendment, and the claims brought pursuant to 42 U.S.C. § 1983 are barred by the Eleventh Amendment, by the language of the statute itself, or by judicial immunity.

## 1.   Title II of the ADA

As discussed above in Part III.A.2, a plaintiff may not bring an ADA claim against a state actor in her individual capacity. So to the extent that the plaintiff brings these claims against Judge Nguyen-O'Dowd in her individual capacity, they are being dismissed.

As discussed above in Part III.A.2, under the first step of

the "three-step process for analyzing whether Congress has

validly abrogated a state's sovereign immunity from suit in the

context of a particular Title II claim," Mary Jo C., 707 F.3d at

152, the court must determine which aspects of Judge Nguyen-

O'Dowd's alleged conduct violated Title II. With respect to

Counts 3 and 4, however, the court cannot reach that question

and make such a determination. In his appeal to the Connecticut

Appellate Court in F.S. v. J.S., the plaintiff sought a

determination that the conduct of Judge Nguyen-O'Dowd alleged in

Counts 3 and 4 violated Title II. The Appellate Court held that

there was no Title II violation, and the Connecticut Supreme

Court denied the plaintiff's petition for certiorari. See F.S.,

223 Conn. App. at 790-92, cert. denied, 350 Conn. 903 (2024).

Therefore the plaintiff is collaterally estopped from

relitigating these issues. As a result, the court cannot advance

past the first stage of the Georgia analysis with respect to the

plaintiff's Title II claims, and they are barred by the Eleventh

Amendment.

    As an initial matter, the court notes that the plaintiff

maintains that collateral estoppel based on F.S. v. J.S. cannot

apply here because state courts lack jurisdiction over Title II

claims. See, e.g., Third Am. Compl., at 2 ("The U.S. District

court (or a Federal Agency) has *exclusive* jurisdiction over

Title II A.D.A. complaints . . . ."); Pl.'s Obj. to Mot. to

Dismiss (ECF No. 79) ("Pl.'s Obj."), at 6 ("[T]he defendant's arguments as to collateral estoppel are irrelevant as the Federal District Court has exclusive jurisdiction over ADA Complaints."). The plaintiff cites federal administrative guidance which omits mention of state courts as a forum for relief. See Pl.'s Sur-Reply (ECF No. 81), at 3. He also cites to language in defendant Buckley's denial of his administrative grievance. He claims that "the form directs the plaintiff [that] the right of appeal of their decision is directed to the Federal Court. An admission of exclusive jurisdiction of this court." See Pl.'s Sur-Reply, at 3. However, in that form Buckley specifically included the Connecticut Commission on Human Rights and Opportunities, a state agency, as an avenue for "further review of this matter," in addition to the Department of Justice. See Third Am. Compl. Ex. F.

In any event, it is clearly established that there is a "default assumption that 'state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States.'" Haywood v. Drown, 556 U.S. 729, 735–36 (2009) (quoting Tafflin v. Levitt, 493 U.S. 455, 458 (1990)). "Congress has not granted exclusive jurisdiction over ADA claims to the federal courts . . . . Accordingly, . . . federal courts do not have exclusive jurisdiction over a claim for relief under the ADA . . . ."

Hedgepeth v. Tennessee, 33 F. Supp. 2d 668, 672–73 (W.D. Tenn. 1998) (footnote omitted) (citing Hapgood v. City of Warren*,* 127 F.3d 490, 494 (6th Cir. 1997), cert. denied*,* 522 U.S. 1046 (1998)), aff'd, 215 F.3d 608 (6th Cir. 2000). See also Anonymous v. New York City Dep't of Educ., No. 1:24-CV-04232 (JLR), 2024 WL 3460049, at *4 (S.D.N.Y. July 18, 2024) (citing Meadows v. Robert Flemings, Inc., 737 N.Y.S.2d 272, 272 (1st Dep't 2002) ("State courts have concurrent jurisdiction over Title VII and ADA claims.")).

Collateral estoppel "prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." Zappin v. Comfort, No. 18-CV-01693-ALC-OTW, 2022 WL 6241248, at *19 (S.D.N.Y. Aug. 29, 2022) (quoting Marvel Characters, Inc. v. Simon, 310 F.3d 280, 288 (2d Cir. 2002)), report and recommendation adopted, No. 18-CV-1693 (ALC) (OTW), 2022 WL 4592551 (S.D.N.Y. Sept. 30, 2022).

> For collateral estoppel to bar a court from
> considering an action, four criteria must be
> satisfied: "(1) the identical issue was raised in a
> previous proceeding; (2) the issue was 'actually
> litigated and decided' in the previous proceeding; (3)
> the party had a 'full and fair opportunity' to
> litigate the issue; and (4) the resolution of the
> issue was 'necessary to support a valid and final
> judgment on the merits.'" Boguslavsky v. Kaplan, 159
> F.3d 715, 720 (2d Cir. 1998) (internal citations
> omitted); see also Bifolck v. Philip Morris USA Inc.,
> 936 F.3d 74, 79 (2d Cir. 2019) (internal citations
> omitted).

When parties absent from the original proceeding(s) become defendants in subsequent litigation, non-mutual collateral estoppel permits the new defendant(s) "to rely on . . . collateral estoppel to bar claims or issues, . . . assuming the issue was fully and fairly litigated in the first instance." Ranasinghe v. Kennell, No. 16cv2170 (JMF), 2017 WL 384357, at *3 (S.D.N.Y. Jan. 25, 2017); Lipin v. Hunt, No. 14cv1081 (RJS), 2015 WL 1344406, at *5 (S.D.N.Y. Mar. 20, 2015) ("The doctrine of non-mutual defensive collateral estoppel 'precludes a plaintiff from relitigating identical issues by merely switching adversaries.'" (internal citations omitted)).

Once a competent court has decided an issue, that determination "is conclusive on subsequent suits based on a different cause of action involving a party to the prior litigation." Zappin v. Cooper, 2018 WL 708369 at *15 (internal citations and quotation marks omitted). Federal courts "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984); see also Allen v. McCurry, 449 U.S. 90, 96 (1980) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so ..."). Additionally, a federal court must apply the collateral estoppel rules of the state that ordered the prior judgment pertaining to the issue. See LaFleur v. Whitman, 300 F.3d 256, 271 (2d Cir. 2002).

Id. "[D]istrict courts must ensure that application of the doctrine is not unfair." Bifolck, 936 F.3d at 80 (citing Parklane Hosiery, 439 U.S. at 331).

The judgment of the Connecticut Appellate Court in F.S. v. J.S. carries preclusive effect, and this case does not present any unfairness in recognizing that preclusive effect.

-22-

Accordingly, the relitigation of these issues in this case is precluded by the doctrine of nonmutual defensive collateral estoppel.

The plaintiff claims in Count 3 that Judge Nguyen-O'Dowd "denied use of a medical accommodation for his disabilities as required by Title II of the ADA." Third Am. Compl., at 35. He alleges that "Defendant Nguyen[-O'Dowd] refused to abide by the existing A.D.A. Accommodation Order of Judge Diana" when she ceased half-day trial sessions in favor of nonconsecutive days of full trial, "and then 'directed' the Plaintiff to proceed thereby placing the Plaintiff at risk to his health." Id. The plaintiff further claims in Count 4 that, when he refused to participate in the trial on the revised schedule, Judge Nguyen-O'Dowd retaliated against him. All the criteria for the applicability of collateral estoppel are satisfied here.

First, the issues here are identical to those in F.S. v. J.S. The Connecticut Appellate Court stated: "[Sakon]'s first two claims assert that the trial court violated his rights under the ADA. Specifically, [Sakon] claims that the court (1) refused to provide him throughout the underlying proceedings with the same medical accommodation first granted to him by Judge Diana and (2) retaliated against him for exercising his ADA rights by denying motions and prematurely resting his case. We conclude that both claims are without merit." F.S., 223 Conn. App. at

788, cert. denied, 350 Conn. 903 (2024). Sakon seeks to
relitigate the same two issues in Counts 3 and 4.

Second, these two issues were actually litigated and
decided in F.S. v. J.S. As to the first issue, the Appellate
Court stated:

> The ADA defines a public entity as, inter alia,
> "(A) any State or local government; [or] (B) any
> department, agency, special purpose district, or other
> instrumentality of a State or States or local
> government ...." 42 U.S.C. § 12131 (1) (2018). "For
> purposes of the ADA, the Connecticut Superior Court is
> considered to be a public entity." State v. Riddick,
> 61 Conn. App. 275, 283 n.5, 763 A.2d 1062, cert.
> denied, 255 Conn. 946, 769 A.2d 61 (2001).
> Accordingly, once a court identifies a litigant as
> having a disability, it should act to provide some
> reasonable accommodation to allow the litigant to
> participate in the court proceedings. A court has
> considerable discretion, however, in choosing the type
> of accommodation to offer. See id., at 283-84, 763
> A.2d 1062; see also McElwee v. Orange, 700 F.3d 635,
> 641 (2d Cir. 2012) ("[a]lthough a public entity must
> make reasonable accommodations, it does not have to
> provide a disabled individual with every accommodation
> he requests or the accommodation of his choice"
> (internal quotation marks omitted)). A party is not
> entitled to the precise accommodation that he or she
> requests but only a reasonable accommodation.
> See Cooling v. Torrington, 221 Conn. App. 567, 584-85,
> 302 A.3d 319 (2023). Moreover, if a party needs a
> specific accommodation, then he or she needs to
> provide enough information to demonstrate why only
> that accommodation is sufficient. See id., at 586, 302
> A.3d 319.
>
> In the present case, [Sakon] made an oral request
> for a continuance in which he argued that he was under
> stress and needed time between hearing dates to rest
> and effectively present his case. [Sakon] did not make
> a formal ADA request prior to his oral motion to the
> court either by contacting the court's ADA coordinator
> or by completing a form requesting accommodations by a

person with disabilities that is available on the
Judicial Branch website. His medical provider
submitted a letter that did not suggest any particular
accommodation but only recommended that the court
adjust the hearing schedule, which at that time
consisted of back-to-back full day hearings, so as to
reduce [Sakon]'s stress. Judge Diana, upon review of
the recommendation of [Sakon]'s medical provider and
having listened to [Sakon] explain the source and
nature of his stress, "adjust[ed] the court's schedule
to accommodate [Sakon's] health" by limiting the
length of the remaining then scheduled hearing dates
to half days only. Nothing in the language that the
court used rendered that accommodation nonmodifiable
in the future. To the contrary, the court required
[Sakon] to keep the court apprised of any changes in
his medical condition, from which it can be reasonably
inferred that the accommodation was never intended to
be permanent or to bind future courts in the event of
a change in relevant circumstances.

It is axiomatic that a trial court "has a
responsibility to avoid unnecessary interruptions, to
maintain the orderly procedure of the court docket,
and to prevent any interference with the fair
administration of justice. . . . In addition, matters
involving judicial economy, docket management [and
control of] courtroom proceedings . . . are
particularly within the province of a trial
court. . . . The court inherently holds reasonable
control over its schedule." (Citation omitted;
internal quotation marks omitted.) M. B. v. S. A., 194
Conn. App. 727, 733-34 [] (2019). [Sakon] has provided
no authority, nor are we aware of any, that stands for
the proposition that once a public entity has provided
an accommodation it is not permitted to adjust it
under appropriate circumstances or to provide a
substitute accommodation.

Here, when it became clear to Judge Nguyen-O'Dowd
that continuing with half day sessions would be
untenable and interfere with docket management and the
fair administration of justice, it was well within the
court's discretion to substitute Judge Diana's prior
accommodation for one that was equally reasonable.
Proceeding with full day hearings on nonconsecutive
days still allowed time for [Sakon] to rest and

recover from the prior day's proceedings and reduced the stress of preparing for the next day, which was fully in accord with the recommendation of [Sakon]'s medical provider. In fact, it was the exact accommodation [Sakon] originally requested from Judge Diana. See footnote 12 of this opinion.

We are unpersuaded that the court conducted the custody hearing in a manner that violated [Sakon]'s rights under the ADA. Accordingly, he is not entitled to a new hearing on that basis.

223 Conn. App. at 790-92, cert. denied, 350 Conn. 903 (2024).

As to the second issue, the Appellate Court stated:

The ADA prohibits retaliation against "any individual because such individual has opposed any act or practice made unlawful by [the ADA] . . . ." 42 U.S.C. § 12203 (a) (2018). To ultimately succeed on a claim of retaliation under the ADA, however, a plaintiff must establish that the alleged retaliatory actions of the defendant would not have occurred "but for" the plaintiff having exercised his ADA rights. See Natofsky v. City of New York, 921 F.3d 337, 346-50 (2d Cir. 2019). In other words, if the defendant has even one legitimate, nonretaliatory reason for its actions, the plaintiff's claim of retaliation will fail unless the plaintiff produces evidence to rebut the proffered nondiscriminatory reason. See Ring v. Boca Ciega Yacht Club Inc., 4 F.4th 1149, 1163 (11th Cir. 2021) (defendant was entitled to summary judgment on plaintiff's ADA retaliation claim because plaintiff failed to rebut nondiscriminatory reason proffered by defendant).

In the present case, [Sakon] asserts that the acts of retaliation by the court are its denial of his motions and the court's resting of his case following his repeated failures to appear. [Sakon], however, has not pointed us to anything in the record that would support his assertion that these actions were done with discriminatory animus rather than, as reflected in the record, as a response to [Sakon]'s failure to appear. As aptly argued by [F.S.], there was a reasonable and nondiscriminatory basis for the court's actions for which [Sakon] has failed to account, and,

-26-

> therefore, [Sakon]'s claim of discriminatory
> retaliation under the ADA necessarily fails.

F. S., 223 Conn. App. at 792–93, cert. denied, 350 Conn. 903

(2024).

Third, as evidenced by the Appellate Court's opinion, Sakon

had a full and fair opportunity to litigate these two issues in

F.S. v. J.S. In addition, he had the opportunity to, and

actually did, file a petition with the Connecticut Supreme Court

seeking further review.

Fourth, the resolution of these issues in F.S. v. J.S. was

necessary to the Appellate Court's valid and final judgment on

the merits. Sakon sought to overturn the Custody Judgment on the

basis of these two alleged Title II violations, among other

grounds. Sakon "claim[ed] on appeal that he is entitled to a new

custody hearing because the court improperly (1) violated the

Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101

et seq. (2018), by refusing to continue to provide him with a

medical accommodation previously granted to him by the court;

[and] (2) terminated [his] presentation of evidence and denied

certain motions in retaliation for his exercising his rights

under the ADA . . . ." F.S. v. J.S., 223 Conn. App. at 770,

cert. denied, 350 Conn. 903 (2024).

Under these circumstances, the application of nonmutual

defensive collateral estoppel in this case is "not unfair." See

-27-

Bifolck, 936 F.3d at 80 (citing Parklane Hosiery, 439 U.S. at 331).

Therefore, the official-capacity ADA claims included in Counts 3 and 4 are barred by the Eleventh Amendment and are being dismissed.

### 2.   Section 1983

The claims in Counts 3 and 4 against Judge Nguyen-O'Dowd in her official capacity are barred by the Eleventh Amendment for the reasons discussed above with respect to the claims in Counts 1 and 2 against defendants Buckley and Carroll in their official capacities.

Any claim for injunctive relief against Judge Nguyen-O'Dowd in her official capacity is also barred by the plain language of § 1983. "[A] state official in his or her official capacity" may be "sued for injunctive relief" as a "person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" Will, 491 U.S. at 71 n.10 (quoting Graham, 473 U.S. at 167 n.14). However, "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Judge Nguyen-O'Dowd acted in her judicial capacity when "dismissing [Sakon's] pending motions with prejudice, terminating trial, and

proceeding to judgment." Third Am. Compl., at 36. The plaintiff
has not alleged facts showing that any declaratory decree was
violated or that declaratory relief was unavailable. He did in
fact seek such relief by means of his appeal in F.S. v. J.S.

The plaintiff's claims in Counts 3 and 4 against Judge
Nguyen-O'Dowd in her individual capacity are barred by judicial
immunity. "It is well settled that judges generally have
absolute immunity from suits for money damages for their
judicial actions." Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir.
2009). "Like other forms of official immunity, judicial immunity
is an immunity from suit, not just from ultimate assessment of
damages." Mireles v. Waco, 502 U.S. 9, 11 (1991). "Accordingly,
judicial immunity is not overcome by allegations of bad faith or
malice, the existence of which ordinarily cannot be resolved
without engaging in discovery and eventual trial." Id. Rather,
judicial immunity is overcome only under two circumstances.
"First, a judge is not immune from liability for nonjudicial
actions, i.e., actions not taken in the judge's judicial
capacity." Id. "Second, a judge is not immune for actions,
though judicial in nature, taken in the complete absence of all
jurisdiction." Id.

Neither circumstance is present here. First, taking the
plaintiff's factual allegations as true, Judge Nguyen-O'Dowd
would have been acting in her judicial capacity if she had, as

alleged, "retaliated against plaintiff for exercising his accommodation, by dismissing pending motions with prejudice, terminating trial, and proceeding to judgment." Third Am. Compl., at 36. These acts are judicial in nature because they are "acts arising out of, or related to, individual cases before the judge," Bliven, 579 F.3d at 210, and consist of "function[s] normally performed by a judge, and to the expectations of the parties, i.e., [in dealing] with the judge in [her] judicial capacity." Huminski v. Corsones, 396 F.3d 53, 75 (2d Cir. 2005) (quoting Stump v. Sparkman, 435 U.S. 349, 362 (1978)). Second, each of these acts are within the state court's jurisdiction to decide pending motions and to control its docket during state custody trials. See Bobrowsky v. Yonkers Courthouse, 777 F.Supp.2d 692, 715 (S.D.N.Y. 2011).

The plaintiff maintains that Judge Nguyen-O'Dowd is not protected by judicial immunity because she retaliated against him. See Pl.'s Obj., at 5. However, as noted above, judicial immunity "is not overcome by allegations of bad faith or malice." Mireles, 502 U.S. at 11.

Therefore, the § 1983 claims in Counts 3 and 4 are being dismissed.

### C.   Counts 5, 6, and 9 Through 13: Judge Nguyen-O'Dowd

The claims in these seven counts against Judge Nguyen-O'Dowd arise out of the Custody Judgment. However, as explained

in Sakon III:

> The plaintiff brought a previous federal action,
> Sakon v. [Nguyen-O'Dowd], No. 3:22-cv-528 (AWT)
> ("Sakon I"), which he "[withdrew] and refiled as"
> Sakon v. State of Connecticut, et al., No. 3:22-cv-897
> (AWT) ("Sakon II"). Pl.'s Opp., ECF No. 42 at 7 n.8.
> According to the plaintiff, Sakon II concerns certain
> "Title II [Americans with Disabilities Act]
> constitutional violations of Judge [Nguyen-O'Dowd] at
> trial and before her Memorandum of Judgment of July
> 15, 2022." Id. at 2 n.1. The plaintiff differentiates
> Sakon II from "the instant case, [where] the plaintiff
> challenges the actions of Judge [Nguyen-O'Dowd], Judge
> Diana, Judge Nastri and Judge Klau from July 15, 2022
> and thereafter." Id.

2024 WL 4041305, at *2 (alterations in original). But in the

Third Amended Complaint the plaintiff added these claims arising

out of the Custody Judgment.

Most of these claims are barred by the doctrine of res

judicata and one is also barred by collateral estoppel, and they

are being dismissed; the court declines to exercise supplemental

jurisdiction with respect to the claims that are not barred by

those doctrines. Moreover, in any event, pursuant to the

domestic relations abstention doctrine, the court would decline

to exercise jurisdiction over the claims in these counts.

### 1. Res Judicata

In Sakon III the court declined to exercise supplemental

jurisdiction over the claims brought against Judge Nguyen-O'Dowd

in her individual capacity pursuant to Article First, § 20 of

the Connecticut Constitution; dismissed the individual-capacity

§ 1983 claims against Judge Nguyen-O'Dowd on the basis of judicial immunity; and concluded that, because of the Eleventh Amendment, the court lacked subject matter jurisdiction over the remaining claims. Because of Sakon III, the claims in Counts 5, 6, and 9 through 13, other than the Connecticut constitutional claims brought against Judge Nguyen-O'Dowd in her individual capacity, are barred by the doctrine of res judicata and are being dismissed.

"The doctrine of res judicata, or claim preclusion, holds that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" United States v. Envicon Dev. Corp., 153 F. Supp. 2d 114, 123 (D. Conn. 2001) (quoting Monahan v. N.Y. City Dep't of Corrs., 214 F.3d 275, 284 (2d Cir. 2000) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980))). "The Second Circuit has adopted the rule that '"any attempt by the parties or those in privity with them to relitigate any of the matters that were raised or could have been raised therein is barred under the doctrine [of] res judicata."'" Id. (quoting Sure-Snap Corp. v. State Street Bank and Trust Co., 948 F.2d 869, 873 (2d Cir. 1991) (quoting Miller v. Meinhard-Commercial Corp., 462 F.2d 358, 360 (5th Cir. 1972))); accord Umar Oriental Rugs, Inc. v. Carlson & Carlson, Inc., 757 F. Supp. 2d 218, 224 (E.D.N.Y. 2010) (quoting Flaherty

v. Lang, 199 F.3d 607, 612 (2d Cir. 1999)).

"To determine whether the doctrine of res judicata bars a subsequent action, we consider whether 1) the prior decision was a final judgment on the merits, 2) the litigants were the same parties, 3) the prior court was of competent jurisdiction, and 4) the causes of action were the same." Corbett v. MacDonald Moving Servs., Inc., 124 F.3d 82, 87–88 (2d Cir. 1997) (citing In re Teltronics Servs., Inc., 762 F.2d 185, 190 (2d Cir. 1985)).

As to the first requirement, normally "dismissals for lack of subject matter jurisdiction," like most of the claims in Sakon III, "are not on the merits and are not accorded res judicata effect." Thompson v. County of Franklin, 15 F.3d 245, 253 (2d Cir. 1994) (citing Exchange National Bank v. Touche Ross & Co., 544 F.2d 1126, 1130–31 (2d Cir. 1976)); accord Carruthers v. Flaum, 388 F. Supp. 2d 360, 378 (S.D.N.Y. 2005) ("Unlike dismissals for a plaintiff's failure to state a claim, dismissals for lack of subject matter jurisdiction are not on the merits and are not accorded res judicata effect."). See also George v. Storage Am., No. 13 Civ. 9226 (LAK), 2014 WL 1492484, at *3 (S.D.N.Y. Mar. 6, 2014) (collecting cases), objections overruled, 2014 WL 1494116 (S.D.N.Y. Apr. 16, 2014). But here, "[b]ecause this Court has already ruled that the Court lacks subject matter jurisdiction over an essentially identical

-33-

Complaint filed by [the plaintiff] against the[] same
[d]efendant[],” the claims are “barred by res judicata.” Thomas
v. Brasher-Cunningham, No. 3:19-CV-1981 (VAB), 2020 WL 4284564,
at *8 (D. Conn. July 27, 2020) (citing Corbett, 124 F.3d at 88
(“After a Federal court has decided the question of the
jurisdiction over the parties as a contested issue, the court in
which the plea of res judicata is made has not the power to
inquire again into that jurisdictional fact.” (quoting Stoll v.
Gottlieb, 305 U.S. 165, 172 (1938) (internal quotation marks
omitted)))). See also George, 2014 WL 1492484, at *3 (collecting
cases), objections overruled, 2014 WL 1494116 (S.D.N.Y. Apr. 16,
2014). “While a dismissal for lack of subject matter
jurisdiction is generally not considered a dismissal ‘on the
merits,’ and is therefore not accorded res judicata effect . . .
a finding of lack of subject matter jurisdiction is res judicata
as to that particular issue in subsequent actions between the
parties.” Anthony Pappas for Cong. v. Lorintz, No. CV 18-4199
(JS) (AKT), 2019 WL 4396589, at *8 (E.D.N.Y. Aug. 2, 2019)
(internal quotations and citations omitted), report and
recommendation adopted sub nom. Pappas v. Lorintz, 2019 WL
4396761 (E.D.N.Y. Aug. 26, 2019), aff’d, 832 F. App’x 8 (2d Cir.
2020).

Therefore, notwithstanding the fact that most of these
claims were dismissed in Sakon III because the court lacked

-34-

subject matter jurisdiction, Sakon III bars all of these claims under the doctrine of res judicata because the parties, events, and jurisdictional issues are identical in the two cases. As discussed below, the same plaintiff, John Alan Sakon, advances the same claims against the same defendant, Judge Nguyen-O'Dowd, arising out of the Custody Judgment. Thus, whether the corresponding claims in Sakon III were dismissed for lack of jurisdiction or on the merits, the first requirement under Corbett is met here.

The second requirement under Corbett is also met. The claims in these counts are against Judge Nguyen-O'Dowd, and so were the relevant claims in Sakon III.

As to the third requirement, although the plaintiff's claims in Sakon III arose under federal statutes, see 28 U.S.C. § 1331, the court had to "examine each claim in [the] case to see if the court's jurisdiction over that claim [was] barred by the Eleventh Amendment," Pennhurst, 465 U.S. at 121. The court determined that the Eleventh Amendment barred subject matter jurisdiction over most of these claims. See Sakon III, 2024 WL 4041305, at *6, *10. In dismissing this group of claims on jurisdictional grounds, the court nonetheless "acted within [its] jurisdiction because 'a court always has jurisdiction to determine its own jurisdiction.'" George, 2014 WL 1492484, at *4 (quoting Tancredi v. Metropolitan Life Ins. Co., 378 F.3d 220,

225 (2d Cir. 2004)), objections overruled, 2014 WL 1494116
(S.D.N.Y. Apr. 16, 2014). See also Corbett, 124 F.3d at 88
("Every court in rendering a judgment tacitly, if not expressly,
determines its jurisdiction over the parties and the subject
matter." (quotation marks and citation omitted)). The Eleventh
Amendment did not disturb, however, the court's jurisdiction
over the individual-capacity § 1983 claims pursuant to 28 U.S.C.
§ 1331. The court exercised its jurisdiction and dismissed these
claims on the merits, based on judicial immunity. See Sakon III,
2024 WL 4041305, at *12. This was an exercise of jurisdiction,
not a determination of jurisdiction, because judicial immunity
is not a jurisdictional defense. See Carroll v. Trump, 88 F.4th
418, 425-26 & n.25 (2d Cir. 2023) ("[W]e have repeatedly
distinguished absolute immunity defenses from defenses based on
subject-matter jurisdiction.").

     As to the fourth requirement, "[t]o determine whether the
causes of action are the same, we examine whether the same
transaction, evidence, and factual issues are involved in both
cases." Corbett, 124 F.3d at 89 (citing Sure-Snap, 948 F.2d at
874; NLRB v. United Technologies Corp., 706 F.2d 1254, 1260 (2d
Cir. 1983)).

     In Sakon III Counts 3 through 5 were described as follows:

          In Count 3, the plaintiff claims that "the Connecticut
          Family court may not consider any physical or mental
          impairment of a qualified individual under Title II of

-36-

the [Americans with Disabilities Act ("ADA")] and under [Article First, § 20 of] the Connecticut Constitution in the making of custodial decisions."[5]

In Count 4, the plaintiff claims that

> the parent-child relationship is a constitutionally protected First Amendment right under the due process clause of the Fourteenth Amendment and its Fifth Amendment counterpart, being a fundamental liberty interest predating the Founding and the State may not impose a charge for a service or fee for the enjoyment of [ ] said right as this parent-child right is granted protection in the Federal Constitution by the founding fathers.

In Count 5, the plaintiff claims that "a court may not order a parent to enter therapy to reform and reeducate their beliefs as a condition of custody, visitation and further commerce with their child. Such an action being a 'compulsory unification of opinion' which is antithetical to the values set forth in the First Amendment."

Sakon III, 2024 WL 4041305, at *2 (footnote and citations

---

[5] As explained in Sakon III with respect to Article First, § 20 of the Connecticut Constitution:

> The plaintiff refers to this section as the "Fifth Amendment" to the Connecticut Constitution, but quotes directly from Article First, § 20. . . . The court notes that Section 20 was amended by Articles V and XXI of the Amendments to the Constitution of the State of Connecticut. See State v. Jose A.B., 342 Conn. 489, 505 n.19 (2022) (relating the amendment history of Article First, § 20 of the Connecticut Constitution).

> This section provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability." Conn. Const. art. I, § 20. It is known as the "state constitution's equal protection clause." Jose A.B., 342 Conn. at 510.

2024 WL 4041305, at *2. In this case, the court will also refer to the plaintiff's claim as arising under Article First, § 20 of the Connecticut Constitution.

omitted).

The claims in Counts 5, 6, and 9 through 13 of the Third
Amended Complaint are either identical to claims in <u>Sakon III</u>,
or relate to "the same transaction, evidence, and factual
issues," <u>Corbett</u>, 124 F.3d at 89 (citing <u>Sure-Snap</u>, 948 F.2d at
874; <u>NLRB</u>, 706 F.2d at 1260), such that they "<u>could have been
raised therein</u>." <u>Envicon</u>, 153 F. Supp. 2d at 123 (quoting <u>Sure-
Snap</u>, 948 F.2d at 873 (quoting <u>Miller</u>, 462 F.2d at 360)); <u>accord
Umar Oriental Rugs</u>, 757 F. Supp. 2d at 224 (quoting <u>Flaherty</u>,
199 F.3d at 612).

Count 5 is almost completely duplicative of <u>Sakon III</u>. It
claims that Judge Nguyen-O'Dowd's alleged disability
discrimination against the plaintiff "extends to [the]
07/15/2022 decree" in violation of Title II and Article First,
§ 20 of the Connecticut Constitution. Third Am. Compl., at 37.
It also includes a claim that the Custody Judgment itself
violates the ADA because it was retaliation against the
plaintiff for filing the instant lawsuit.[6] <u>See id.</u> It claims that
for the same reason, the Custody Judgment violates § 1983. <u>See
id.</u> Because Count 5 of the Third Amended Complaint restates the

---

[6] The court notes that the first iteration of this lawsuit was filed before
the Custody Judgment and before <u>Sakon III</u>, with a different caption. <u>See</u>
Third Am. Compl., at 37 ("Plaintiff filed Federal Lawsuit on 04/11/2022
. . . . Said suit is now the instant case."). Therefore, the plaintiff could
have raised in <u>Sakon III</u> his claim that the Custody Judgment was retaliation
for filing the instant suit.

ADA claim in Count 3 of <u>Sakon III</u>, and simply adds a § 1983 claim based on the same core series of events, it is barred by res judicata.

Count 6 is also almost completely duplicative of <u>Sakon III</u>. It claims that "[b]y her decree," Judge Nguyen-O'Dowd violated the plaintiff's First, Fifth, and Fourteenth Amendment rights because the order required the plaintiff to use a "Therapeutic Supervised Visitation Agency" to visit his minor child. Third Am. Compl., at 38. He brings these claims based on the "order of 07/15/2022" under § 1983 and also under Title II. Because Count 6 of the Third Amended Complaint restates the ADA claim in Count 3 of <u>Sakon III</u>, and restates the § 1983 claims based on the First, Fifth, and Fourteenth Amendments in Count 4 of <u>Sakon III</u>, it is barred by res judicata.

Count 9 combines aspects of Counts 5 and 6 of the Third Amended Complaint. It claims that Judge Nguyen-O'Dowd issued the Custody Judgment as retaliation against the plaintiff for filing this lawsuit, and that this retaliation is disability discrimination under Article First, § 20 of the Connecticut Constitution. <u>See</u> Third Am. Compl., at 40. Because it is duplicative of Count 3 in <u>Sakon III</u>, it is barred by res judicata.

Count 10 is a claim that requiring the plaintiff to undergo therapy for narcissistic personality disorder as a condition of

contact with his minor child is "a 'compulsory unification of opinion' which is antithetical to the values set forth in the First Amendment." Third Am. Compl., at 41 (citation omitted) (emphasis removed). Even though the plaintiff now asserts that the Custody Judgment was in "retaliation" for filing this lawsuit, see id., his core claim is duplicative of, and nearly a verbatim copy of, Count 5 in Sakon III. Therefore, Count 10 is barred by res judicata.

Count 11 is a claim that the Custody Judgment violates the Double Jeopardy Clause of the Fifth Amendment because it punishes the plaintiff for previous criminal proceedings in which he was found not guilty. See Third Am. Compl., at 41. Because this claim challenges the Custody Judgment and could have been brought with the plaintiff's other such challenges in Sakon III, it is barred by res judicata.

Count 12 is a claim that disability discrimination in violation of the ADA by Judge Nguyen-O'Dowd not only "extends to the decree," i.e. the Custody Judgment, but also is disability "[d]iscrimination extending against the child," i.e. the plaintiff's minor child, by reason of the plaintiff's disability. See Third Am. Compl., at 41–42. This claim is duplicative of Count 3 in Sakon III, and as explained in Sakon III, the plaintiff cannot bring a claim on behalf of his minor child. See Sakon III, 2024 WL 4041305, at *4. For this reason,

Count 12 is barred by res judicata.

Count 13 is a claim that Judge Nguyen-O'Dowd "retaliated against Plaintiff and abused her discretion by considering an outdated 2019 Custody Evaluation Report as a pretense to sever the parent-child relationship in violation of established State Law . . . ." Third Am. Compl., at 42. The plaintiff does not identify a cause of action, but he attacks the Custody Judgment on this basis. Because this claim could have been brought with the other challenges to the Custody Judgment in Sakon III, Count 13 is barred by res judicata.[7]

The fact that there is an appeal pending in Sakon III, appeal docketed, No. 24-3218 (2d Cir. Dec. 12, 2024), does not change the res judicata analysis. "Unless a court issues a stay, a trial court's judgment (say, dismissing a case) normally takes effect despite a pending appeal. See Fed. Rule Civ. Proc. 62; Fed. Rule App. Proc. 8(a). And a judgment's preclusive effect is generally immediate, notwithstanding any appeal." Coleman v. Tollefson, 575 U.S. 532, 539 (2015) (citing Clay v. United States, 537 U.S. 522, 527 (2003) ("Typically, a federal judgment becomes final for . . . claim preclusion purposes when the district court disassociates itself from the case, leaving nothing to be done at the court of first instance save execution

---

[7] In Sakon II, the court concluded that "[b]ecause state proceedings were ongoing at the time the Complaint in this matter was filed, Rooker-Feldman does not bar the plaintiff's claims." 2023 WL 5042476, at *3.

of the judgment.")). The court has not issued a stay pending appeal in Sakon III. Accordingly, the judgment in that case has preclusive effect.

### 2.   Count 13

Count 13 is also barred by collateral estoppel because the issue of whether Judge Nguyen-O'Dowd abused her discretion by "considering an outdated 2019 Custody Evaluation Report," Third Am. Compl., at 42, was decided in F.S. v. J.S.

"For collateral estoppel to bar a court from considering an action, four criteria must be satisfied: '(1) the identical issue was raised in a previous proceeding; (2) the issue was "actually litigated and decided" in the previous proceeding; (3) the party had a "full and fair opportunity" to litigate the issue; and (4) the resolution of the issue was "necessary to support a valid and final judgment on the merits."'" Zappin, 2022 WL 6241248, at *19 (quoting Boguslavsky, 159 F.3d at 720 (internal citations omitted) (citing Bifolck, 936 F.3d at 79), report and recommendation adopted, 2022 WL 4592551 (S.D.N.Y. Sept. 30, 2022). "[D]istrict courts must ensure that application of the doctrine is not unfair." Bifolck, 936 F.3d at 80 (citing Parklane Hosiery, 439 U.S. at 331).

A review of the opinion in F.S. v. J.S. shows that all four requirements are satisfied here, and the application of this doctrine would not be unfair. The Connecticut Appellate Court's

opinion states:

>   [Sakon] further claims that the court improperly relied on a stale custody evaluation in determining the best interest of [the minor child]. We are not persuaded.
>
>   The parties stipulated in February, 2018, that Dr. Smith would conduct a custody evaluation. This agreement was approved by the court. Dr. Smith completed her evaluation in December, 2019, and filed her report with the court that same month. Although the trial had been set to begin in March, 2020, the court closed around this time due to the COVID-19 pandemic and trials were suspended. The trial in this matter began in May, 2021, and concluded in March, 2022. Dr. Smith's 2019 evaluation was admitted into evidence, and she testified regarding the substance of her evaluation and her findings and recommendations, all of which were subject to cross-examination by [Sakon].
>
>   It is well settled that in exercising its considerable discretion in assessing a child's best interest and the ability of parents to meet a child's needs related to custody or visitation, "the court . . . may hear the recommendations of professionals in the family relations field . . . ." (Internal quotation marks omitted.) Merkel v. Hill, 189 Conn. App. 779, 787, 207 A.3d 1115 (2019). Ultimately, however, "the trial court is bound to consider the [child's] present best interests and not what would have been in [his or her] best interests at some previous time." (Emphasis in original; internal quotation marks omitted.) Id., at 788, 207 A.3d 1115. Thus, a "court's reliance on outdated information and past parental conduct in making . . . orders concerning [custody or] parental access may be improper, particularly if the record has adequate current information demonstrating a present ability to parent." Balaska v. Balaska, 130 Conn. App. 510, 518, 25 A.3d 680 (2011).
>
>   In the present case, rather than relying solely on the 2019 custody evaluation, the court had ample current evidence before it of [Sakon]'s present ability to parent. Although the court accepted Dr.

> Smith's evaluation into evidence, it considered and
> evaluated it in light of the updated testimony from
> Dr. Smith and others, as well as evidence submitted by
> both parties regarding [the minor child]'s and the
> parents' current situations. See id. (court's reliance
> on outdated report did not constitute abuse of
> discretion because "there was adequate current
> information in [the] record to support [the court's]
> orders"). We agree with [F.S.]'s assessment in her
> brief that, "although the custody evaluation of Dr.
> Smith may have had some limitations due to the delay
> of the courts being closed due to COVID-19, this goes
> solely to the weight the trial judge gives the report
> rather than its admissibility." Because we are
> convinced from our review of the record that other,
> more current evidence introduced at trial amply
> supports the court's custody determination, the court
> did not abuse its discretion by considering Dr.
> Smith's custody evaluation.

F.S., 223 Conn. App. at 794-96, cert. denied, 350 Conn. 903
(2024).

Thus, the issue raised in Count 13, i.e., whether Judge
Nguyen-O'Dowd abused her discretion by considering the 2019
custody evaluation report, is identical to the issue raised in
F.S. v. J.S. The extensive discussion of the issue in the
Connecticut Appellate Court's opinion shows that the issue was
actually litigated and decided, and that Sakon had a full and
fair opportunity to litigate the issue. Also, resolution of the
issue was necessary to support a valid and final judgment
because Sakon "claim[ed] on appeal that he is entitled to a new
custody hearing because the court improperly . . . relied on a
stale custody evaluation in determining the best interest of
[the minor child।]" F.S., 223 Conn. App. at 770, cert. denied,

350 Conn. 903 (2024). Finally, application of the doctrine of collateral estoppel here is not unfair under these circumstances because "[t]he doctrine of non-mutual defensive collateral estoppel 'precludes a plaintiff from relitigating identical issues by merely switching adversaries.'" <u>Lipin</u>, 2015 WL 1344406, at *5 (internal citations omitted).

### 3. Individual-Capacity Claims Under the Connecticut Constitution

One basis for the claims in Count 5 of the Third Amended Complaint is Article First, § 20 of the Connecticut Constitution. It is also the basis for the claim in Count 9. However, there is no private cause of action under Article First, § 20.

As explained in <u>Rahim v. Barsto</u>, 3:22-cv-619 (MPS), 2022 WL 2704102, at *9 (D. Conn. July 12, 2022):

> Even assuming [the plaintiff] [has] alleged a plausible claim that he had been deprived of equal protection under the law, this Court must decline to exercise supplemental jurisdiction over his claims under Article First, Section 20. <u>See</u> <u>Pierce v. Semple</u>, No. 3:18CV01858 (KAD), 2018 WL 6173719, at *6 (D. Conn. Nov. 26, 2018) ("neither this court nor the Connecticut Supreme court has ever recognized a private cause of action under Article First, § 20 of the Connecticut Constitution."); <u>Richard v. Strom</u>, No. 3:18-CV-1451 (CSH), 2018 WL 6050898, at *8 (D. Conn. Nov. 19, 2018) (concluding "[t]here is no established private right of action under the religious discrimination, due process, or equal protection provisions (Article First, Sections 3, 8, and 20)"); <u>Minto v. Dep't of Mental Health & Addiction Servs.</u>, No. HHDCV176076730S, 2018 WL 710124, at *9 (Conn. Super. Ct. Jan. 11, 2018) ("Connecticut courts have

> unanimously declined to recognize a private cause of
> action under article first, § 20"); see also [Torres
> v. Armstrong, No. CV990427057S,] 2001 WL 1178581, at
> *5-*7, & n.4 (Conn. Super. Ct. Sept. 6, 2001)
> (refusing to recognize prisoner's claims for money
> damages and injunctive relief brought directly under
> Article First, Sections 1, 4, 8, 9, 14 and 20 of the
> Connecticut Constitution).

See also Wylie v. West Haven, No. CV065006403, 2010 WL 2196493,

at *2 (Conn. Super. Ct. Apr. 21, 2010) (collecting cases);

Campbell v. Quiros, 3:17-cv-946 (CSH), 2018 WL 888723, at *11

(D. Conn. Feb. 13, 2018) (no recognized private right of action;

collecting cases); Marshall v. Town of Middlefield, 3:10-cv-1009

(JCH), 2012 WL 601783, at *9 (D. Conn. Feb. 23, 2012) (same).

    "[I]t is inappropriate to exercise supplemental

jurisdiction over [the plaintiff's] claims brought under the

Connecticut constitution that raise new and undeveloped issues

under state law." Holley v. Cook, 3:20-cv-170 (MPS), 2020 WL

6532842, at *4 (D. Conn. Nov. 5, 2020) (citing 28 U.S.C.

§ 1367(c)(1), which provides, in relevant part: "The district

courts may decline to exercise supplemental jurisdiction over a

claim" that "raises a novel or complex issue of State law

. . . .").

    Therefore, the court declines to exercise supplemental

jurisdiction over the plaintiff's claims under the Connecticut

Constitution in Counts 5 and 9.

### 4.   Abstention

For the reasons discussed above, the plaintiff's claims in these counts are either claims that are barred by res judicata and/or collateral estoppel, or ones as to which the court declines to exercise supplemental jurisdiction. But even if that were not so, pursuant to the domestic relations abstention doctrine the court would decline to exercise jurisdiction over these claims.

"Although the domestic relations 'exception' to subject matter jurisdiction . . . does not apply in federal-question cases, the domestic relations abstention doctrine . . . does." Deem v. DiMella-Deem, 941 F.3d 618, 620-21 (2d Cir. 2019). "As a matter of judicial economy, state courts are more eminently suited to [domestic relations work] than are federal courts, which lack the close association with state and local government organizations dedicated to handling [the] issues [involved]." Ankenbrandt v. Richards, 504 U.S. 689, 704 (1992). "Family law, after all, is an area of law that federal courts and Congress leave almost exclusively to state law and state courts." Khalid v. Sessions, 904 F.3d 129, 133 (2d Cir. 2018) (citing Reno v. Flores, 507 U.S. 292, 310 (1993)).

> [E]ven if subject matter jurisdiction lies over a particular matrimonial action, federal courts may properly abstain from adjudicating such actions in view of the greater interest and expertise of state courts in this field. A federal court presented with

> matrimonial issues or issues "on the verge" of being
> matrimonial in nature should abstain from exercising
> jurisdiction so long as there is no obstacle to their
> full and fair determination in state courts.

Am. Airlines, Inc. v. Block, 905 F.2d 12, 14 (2d Cir. 1990).

Both of those perquisites are present here.

As to the first prerequisite, all of the claims in these
counts arise out of the Custody Judgment. As to the second
prerequisite, there has been no obstacle to the full and fair
determination of the issues raised in these claims in the
Connecticut courts.

### D.   Counts 7 and 8 Against Defendants Santos and Nguyen-O'Dowd

In Counts 7 and 8 the plaintiff brings claims, pursuant to
42 U.S.C. § 1983, that defendants Santos and Nguyen-O'Dowd
committed "a criminal violation" of a state statute, Conn. Gen.
Stat. § 17a-28(b), by allowing the "unauthorized disclosure" or
introduction into evidence of protected DCF records in the
custody trial. Third Am. Compl., at 39-40. He notes that
violations of the state disclosure statute carry "a fine of not
more than one thousand dollars or imprisonment for not more than
one year or both." See id.

Section 1983 is not a vehicle for claims arising under
state law. "To establish individual liability in a 1983 action,
a plaintiff must 'show that [an] official, acting under color of
state law, caused the deprivation of a federal right.'" Coon v.

-48-

Town of Springfield, 404 F.3d 683, 686 (2d Cir. 2005) (quoting

Kentucky v. Graham, 473 U.S. 159, 166 (1985)). See also Meizies

v. McDonald, No. 3:21-CV-1041 (KAD), 2021 WL 3914137, at *4 (D.

Conn. Sept. 1, 2021) ("Nor can he assert [§ 1983] claims in this

action for perceived violations of state criminal laws.");

Sykes, 13 F.3d at 519 ("Section 1983 provides a civil claim for

damages against any person who, acting under color of state law,

deprives another of a right, privilege or immunity secured by

the Constitution or the laws of the United States."); Sakon v.

Johnson, No. 3:23-cv-107 (AWT), 2023 WL 5394634, at *2 (D. Conn.

Aug. 22, 2023) (discussing the requirements of § 1983).

    Because the plaintiff cannot bring a § 1983 claim based on

deprivation of a right under state law, these counts are being

dismissed.

### E.    Count 14: State of Connecticut Judicial Branch

    In Count 14 the plaintiff alleges that he ordered a

transcript of a December 8, 2021 hearing before Judge Diana. He

alleges further that notwithstanding the fact that he filed a

motion in Connecticut Superior Court seeking an order to produce

that transcript and others, "[t]he Plaintiff was denied access

to the 12/08/2021 Transcript during briefing and during oral

argument." Third Am. Compl., at 43. He alleges that he only

received the transcript after the oral argument before the

Connecticut Appellate Court. The plaintiff claims that "[t]he

failure of the Connecticut Judicial Department to timely produce the 12/08/2021 Transcript is a failure of due process." Id. at 44. The court construes this statement to be an effort to bring a § 1983 claim for a procedural due process violation. However, "a State is not a person within the meaning of § 1983," Will, 491 U.S. at 64, and "there are no facts to suggest that the Connecticut Judicial Branch . . . is a person for purposes of [S]ection 1983." Collin v. Conn. Jud. Branch, No. 3:16-CV-1390 (SRU), 2016 WL 6304434, at *2 (D. Conn. Oct. 26, 2016) (citing Zuckerman v. Appellate Division, 421 F.2d 625, 626 (2d Cir. 1970) (holding that a state court, as part of the judicial arm of the state, is not a person within the meaning of Section 1983)). See also Farmer v. Branch, No. 3:16-CV-1069 (VAB), 2016 WL 4467886, at *2 (D. Conn. Aug. 22, 2016) ("The Connecticut Judicial Branch, New Britain Superior Court is the final defendant. State agencies, however, are not considered persons within the meaning of [S]ection 1983." (citing Will, 491 U.S. at 71)).

Therefore, the plaintiff cannot bring a § 1983 procedural due process claim against the State of Connecticut Judicial Branch, and Count 14 is being dismissed.

### F.  No Further Amendments

The court will not permit further amendments to the complaint in this action.

> Generally, leave to amend should be freely given, and a <u>pro se</u> litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim. A <u>pro se</u> complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated. However, leave to amend a complaint may be denied when amendment would be futile.

<u>Traylor v. Hammond</u>, 94 F. Supp. 3d 203, 223 (D. Conn. 2015) (quoting <u>Nielsen v. Rabin</u>*, 746 F.3d 58, 62 (2d Cir. 2014) (internal citations and quotation marks omitted)). Here the court has already granted leave to amend the complaint twice. <u>See</u> ECF Nos. 28, 57. Based on the record, the court concludes that any further amendment would be futile.

## IV.    CONCLUSION

For the reasons set forth above, the defendants' motion to dismiss (ECF No. 74) is hereby GRANTED.

The court declines to exercise supplemental jurisdiction over the individual-capacity claims in Counts 5 and 9 brought under Article First, § 20 of the Connecticut Constitution, and the remaining claims in the Third Amended Complaint are dismissed with prejudice.

The Clerk shall close this case.

It is so ordered.

Dated this 24th day of March 2025, at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge